UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GAYLE MORIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-05-178-B-W |
| | ) | |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Viewing the facts in the light most favorable to the Plaintiff, the insurer's motion for summary judgment is denied, because under Maine law a "rent to buy" agreement may create a sufficient equitable interest in property to establish an insurable interest. Regarding damages under Maine's Unfair Claims Practices statute, the Court grants the insurer's motion, because the Plaintiff has failed to make allegations sufficient to sustain a claim under the statute and because the Plaintiff earlier waived any such claim by amending the Complaint to drop this Count. The Court grants the motion regarding tort damages, because Maine law does not recognize an independent tort of bad faith claims handling or bad faith settlement. Finally, because the record is incomplete as to what consequential damages the Plaintiff is claiming from the asserted breach of contract, the Court denies the motion.

**I. STATEMENT OF FACTS**

In her Second Amended Complaint, Gayle Morin, personal representative of the estate of Donald A. Morin, Jr.,[1] alleges that Mr. Morin had an insurable interest in the house located at

---

[1] Following the filing of the Complaint, Mr. Morin died on June 8, 2006. Plaintiff filed a Suggestion of Death pursuant to Rule 25(a)(1) on June 19, 2006. *Suggestion of Death Upon the R.* (Docket # 21). On August 8, 2006,

121 Wings Mills Road, Readfield, Maine, that it was insured by State Farm Fire and Casualty Company, that the house burned on September 9, 2003,[2] that the fire resulted in losses covered by the State Farm homeowners policy, but that State Farm refused to pay the insured losses. *Second Am. Compl.* at 1-2 (Docket # 8). If this case were as clear as the allegations, it would be simple. Instead, State Farm has raised a host of defenses, but for the moment it focuses on whether Mr. Morin had an insurable interest in the residence at the time of the fire and whether Plaintiff may claim the range of damages in the Second Amended Complaint.

On September 9, 2003, when Donald J. Morin, Jr. was living at the house at 121 Wings Mills Road in Readfield, Maine, fire damaged the home.[3] *Def.'s Statement of Material Facts (DSMF)* ¶¶ 1, 2 (Docket # 14); *Pl.'s Statement of Material Facts (PSMF)* ¶¶ 1, 2 (Docket # 24). At the time of the fire, State Farm had issued a homeowner's insurance policy to Mr. Morin. *DSMF* ¶ 3; *PSMF* ¶ 3. At one time, Mr. Morin owned record title to the house at 121 Wings Mills Road; however, his title to the property was lost due to a foreclosure judgment dated October 3, 1991. *DSMF* ¶ 4; *PSMF* ¶ 4. Pursuant to the foreclosure, Peoples Heritage Savings Bank acquired title and subsequently sold the property at public sale to Federal National Mortgage Association. *DSMF* ¶ 5; *PSMF* ¶ 5. The transfer in ownership is reflected in a quitclaim deed

---

Plaintiff filed a Motion to Substitute Party, which was granted on August 25, 2006, substituting Gayle Morin, personal representative of the estate of Donald Morin, as plaintiff. *Unopposed Mot. to Substitute Party* (Docket # 32); *Order* (Docket # 33).

[2] The Second Amended Complaint alleged that the date of the fire was September 7, 2003; however, in its Statement of Material Fact Number 1, State Farm alleged that the actual date was September 9, 2003. *Def.'s Statement of Material Facts (DSMF)* ¶ 1. The Plaintiff admitted this Statement. *Pl.'s Statement of Material Facts (PSMF)* ¶ 1.

[3] Consistent with the "conventional summary judgment praxis," the Court recounts the facts in the light most favorable to the Plaintiff's theory of the case, consistent with record support. *Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11, 17 (1st Cir. 2002). The Court has relied either on the uncontested facts or on Plaintiff's version, if contested.

dated July 29, 1993.  *Id.*  By deed dated July 23, 1993, Federal National Mortgage Association transferred the property to Walter E. Smith.[4]  *DSMF* ¶ 6; *PSMF* ¶ 6.

Some time after Mr. Smith gained record title to the property, Mr. Morin moved into the house.[5]  Mr. Smith and Mr. Morin had an oral agreement whereby, in effect, Mr. Smith had purchased the property from Federal National Mortgage for Mr. Morin's benefit.  *PSMF* ¶ 7.  In exchange for Mr. Morin paying the taxes and the other costs of ownership plus $400.00 per month, Mr. Smith sold the property to Mr. Morin for $37,500.00.  *Id.*  Although there was no interest rate stipulated and no specific length to the agreement, *DSMF* ¶ 11; *PSMF* ¶ 11, Mr. Smith testified that by the time of the fire, Mr. Morin had already paid for the residence.  *PSMF* ¶ 7.  Only "the taxes and other costs" were outstanding.  *Id.*

There was no written agreement concerning the purchase of the home.  *DSMF* ¶ 8; *PSMF* ¶ 11.  Neither Mr. Smith nor Mr. Morin signed a deed or any other paperwork reflecting this arrangement, but Mr. Morin thought there was a mortgage on the property.  *DSMF* ¶ 9; *PSMF* ¶¶ 9, 10.  When Mr. Smith received money from Mr. Morin, he set it down as rent.  *DSMF* ¶ 12; *PSMF* ¶ 12.  Notwithstanding the monthly payments being labeled "rent," Mr. Morin contends that "Mr. Smith never thought of himself as a landlord and never thought of Mr. Morin as his tenant… It 'never crossed [Smith's] mind' whether Morin was a tenant."  PSMF ¶ 14.  Indeed, Mr. Smith told Mr. Morin the property was Mr. Morin's, *DSMF* ¶ 12; *PSMF* ¶ 12, and Mr. Smith considered the property to be Mr. Morin's.  *DSMF* ¶ 14; *PSMF* ¶ 14.

Leading up to the fire, Mr. Morin had fallen behind in his payments to Mr. Smith.  *DSMF* ¶ 13; *PSMF* ¶ 13.  Mr. Smith had initiated eviction proceedings against Mr. Morin and had

---

[4] The Statements of Material Fact do not explain how Federal National Mortgage Association could have transferred property it had not yet acquired.  However, exhibits reflect that the Peoples to Federal National deed was recorded before the Federal National to Smith deed.

[5] The parties do not state when.

3

served him with papers on July 21, 2003, stating that he had failed to make payments for eighteen months. *DSMF* ¶¶ 14, 15, 17; *PSMF* ¶¶ 14, 15, 17. Mr. Morin thought he had made payments to Mr. Smith and thought his default was limited to a failure to pay taxes. *DSMF* ¶ 16; *PSMF* ¶ 16. When Mr. Smith was later questioned, he "referred only to default in taxes not payments." PSMF ¶ 16. Mr. Smith agreed that he did not want "to make money" on the property. *PSMF* ¶ 20; *Def.'s Reply to Pl.'s Statement of Material Fact* ¶ 20 (Docket # 29).

## II. PLEADING ISSUES

Plaintiff initiated this Complaint *pro se* in Kennebec County Superior Court on September 6, 2005. *Def. Ex. 2* (Docket # 1). On October 19, 2005, Attorney Andrews B. Campbell entered his appearance on behalf of Mr. Morin[6] and filed an Amended Complaint, consisting of three counts: Count I – Declaratory Judgment; Count II - Breach of Contract; and, Count III – Unfair Settlement Practices.[7] Counsel for State Farm entered their appearances and filed an Answer to the Amended Complaint on November 16, 2005. *Def. Ex. 1, 6*. The Defendant's Answer responded to each allegation and asserted certain affirmative defenses. *Def. Ex. 6*.

State Farm removed the case to this Court on November 23, 2005. *Notice of Removal* (Docket # 1). On February 7, 2006, the Plaintiff moved to amend the complaint, which Magistrate Judge Kravchuk granted on February 8, 2006. *Pl.'s Mot. to Amend* (Docket # 5); *Order* (Docket # 6). The Second Amended Complaint[8] contained no new allegations; it simply eliminated Counts I and III of the Amended Complaint, restricting the cause of action to breach of contract. *Second Am. Compl.*. State Farm never answered the Second Amended Complaint,

---

[6] The Superior Court docket entry erroneously lists Mr. Campbell and Rick Gordon Winling as State Farm's attorneys. *Def. Ex. 1* (Docket # 1).
[7] Curiously, although filed on October 19, 2005, the Amended Complaint is dated September 6, 2005. *Def. Ex. 1, Ex. 4..*
[8] Although filed on February 10, 2006, the Second Amended Complaint is dated September 6, 2005. *Second Am. Compl.* (Docket # 8).

4

presumably because it had previously answered each allegation when it filed its Answer to the Amended Complaint. *Def. Ex. 6.*

Finally, on June 19, 2006, Mr. Campbell filed a Suggestion of Death pursuant to Fed. R. Civ. P. 25(a)(1), stating that Mr. Morin had died on June 8, 2006 and that Gayle Morin was seeking appointment as Personal Representative. *Suggestion of Death Upon The R. under Rule 25(a)(1)* (Docket # 21). On August 4, 2006, Gayle Morin, Personal Representative of the Estate of Donald Morin, moved to be substituted as plaintiff for Donald Morin and Magistrate Judge Kravchuk granted this Motion on August 25, 2006. *Unopposed Mot. to Substitute Party* (Docket # 32); *Order* (Docket # 33).

### III. DISCUSSION

#### A. Whether Plaintiff Had An Insurable Interest In 121 Wings Mills Road

To insure property, Maine law requires that the proposed insured have an insurable interest in the property:

> 1. No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
> 2. 'Insurable interest' as used in this section means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.

24-A M.R.S.A. § 2406.[9]

The Maine Supreme Judicial Court explicated the meaning of "insurable interest" both before and after the enactment of § 2406. In *Sawyer v. Mayhew*, the Law Court observed that it

---

[9] This statutory provision is echoed in the homeowner's policy: **"1. Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable: a. to the **insured** for an amount greater than the **insured's** interest…." *Insurance Policy,* 24, ¶ 1  Section 1 - Conditions (Docket 15, Ex. 1) (emphasis in original).

"is essential to any contract of insurance that the insured has an interest at risk." 51 Me. 398, 400 (1863). Next, in *Gilman v. Dwelling-House Insurance Co.*, the Maine Supreme Judicial Court addressed whether the purchaser under a purchase and sale agreement had an insurable interest in property. 17 A. 544 (1889). Noting the general rule that an agreement to convey land can create an equitable interest in the property, *Gilman* held that "an equitable interest held under an executory contract is a valid subject of insurance." *Id.* at 492, 17 A. at 544. Later, in 1912, the Law Court stated that to determine whether an insured has an "insurable interest," the question is whether he would be "directly and financially affected by the loss of the property insured." *Getchell v. Mercantile & Mfrs.' Mut. Fire Ins. Co.,* 109 Me. 274, 277, 83 A. 801, 802 (1912). *Getchell* cautioned that the interest must not be "indirect or sentimental" and at the same time, it is not "necessarily an interest in the property in the sense of title, but a concern in the preservation of the property and such a relation to or connection with it as will necessarily entail a pecuniary loss in case of its injury or destruction." *Id.*, 83 A. at 802.

Following the enactment of § 2406, the Law Court considered the question in *Gendron v. Pawtucket Mut. Ins. Co.*, 384 A.2d 694 (Me. 1987). In *Gendron*, the Maine Supreme Judicial Court focused on the "relationship between the insured and the property insured -- more specifically, …whether there is a relationship such that injury to the property will, as a natural consequence, result in a loss to the insured." *Id.* at 696.

Finally, in 1999, then Superior Court Justice Kravchuk applied § 2406, *Getchell*, and *Gendron*, to an insurable interest issue. *Hingham Mut. Fire Ins. Co. v. McLellan*, CV-97-024 (Me. Super. Ct. Was. Cty., May 7, 1999) (Kravchuk, J.), 1999 Me. Super. LEXIS 136 (1999). In *McLellan*, the City of Calais had foreclosed against a homeowner for failure to pay municipal taxes, the redemptive period had expired, and she had lost title to her home. The City had

6

advertised the property for public sale, when the residence was damaged by fire. Justice Kravchuk concluded that the homeowner retained an insurable interest, because she "was aware of the practice of the City of Calais which would allow her to retain her home if she tendered full payment prior to the City receiving a bid." 1999 Me. Super. LEXIS 136, *5 (1999). An evenly divided Maine Supreme Judicial Court affirmed Justice Kravchuk without opinion. *Hingham Mut. Fire Ins. Co. v. McLellan*, 2000 ME 33, 746 A.2d 916.

It is difficult to categorize what interest Mr. Morin had in the property at 121 Wings Mills Road.[10] In certain important respects, the agreement between Mr. Morin and Mr. Smith was nebulous. There was no written agreement, no express term, no express interest rate, and no detail as to other "costs." Nevertheless, according to the parties, they had a specific purchase price, $37,500.00, a specific monthly payment, $400.00, and a general understanding that no more interest than necessary would be paid. Mr. Smith testified that by the time of the fire, Mr. Morin had made sufficient payments to satisfy his obligations and "it was his a long time before." *PSMF* ¶ 7. He did not have legal title, but under Maine law, legal title is not necessary for an insurable interest. *Getchell*, 109 Me. at 277, 83 A. at 802; *Gilman*, 81 Me. at 492, 17 A. at 544 ("The law does not require [existence of a legal title]. An equitable title or interest in the plaintiff is all that is necessary…").

State Farm argues that under traditional analysis, Mr. Morin would have been unable to enforce the contract for sale of the property against Mr. Smith, since, assuming the agreement was to sell property and further that it was for more than one year, the statute of frauds would have rendered it unenforceable. 33 M.R.S.A. §§ 51(4)(contract for sale of land), (5)(agreement

---

[10] State Farm seems to assume that the Plaintiff is claiming only damages to the real property. This may be so, but one would not know it by the allegations in the Amended Complaint. The Amended Complaint claims unspecified "losses incurred as a result of fire damages to his home to Plaintiff." *Second Am. Compl.* ¶ 3. If these losses include damage to Mr. Morin's personal property, State Farm's insurable interest argument would not defeat those claims.

7

not to be performed within one year).  If Mr. Morin and Mr. Smith had disagreed, unraveling this odd ball of legal string would have been a challenge.  But, whether the agreement would have been enforceable is both speculative and immaterial, since the parties to the agreement – as opposed to State Farm – agreed to be bound by it.

Moreover, since the parties to the contract agreed to be bound by its terms, the statute of frauds would not apply.  *See Lush v. Terri and Ruth F/V*, 324 F. Supp. 2d 90, 95 (D. Me. 2004)("Under Maine law, admitting the existence of facts necessary to the formation of a contract takes the oral agreement outside the statute of frauds."); *Paris Util. Dist. v. A.C. Lawrence Leather Co.*, 665 F. Supp. 944, 956-57 (D. Me. 1987), *aff'd on other grounds*, 861 F.2d 1 (1st Cir. 1988); *Mercier v. Town of Fairfield*, 628 A.2d 1053, 1055 (Me. 1993); *Dehahn v. Innes*, 356 A.2d 711, 717-18 (Me. 1976) ("If a defendant permits evidence of a parol agreement relating to land to be introduced without objection, he becomes bound by it.").

The best sense the Court can make of the arrangement between Mr. Morin and Mr. Smith is that it was similar to what is commonly known as "rent-to-buy."  A purchaser rents property over the years and, at the close of an agreed upon period, the seller agrees to transfer title.[11]  Although this agreement is vague to a fault, to determine whether an insurable interest exists, all the law requires is "a relationship such that injury to the property will, as a natural consequence, result in a loss to the insured."  *Gendron*, 384 A.2d at 696.

Looking at this arrangement in the light most favorable to the Plaintiff, both the buyer and seller agree that by the date of the fire, Mr. Morin had performed for long enough under the agreement for him to have satisfied his obligations and the property "was [Mr. Morin's]." *PSMF* ¶ 7.  The only remaining hurdle was for him to pay taxes and other costs.  State Farm may have

---

[11] If so, this would be consistent with Mr. Smith's marking the receipts as "rent" and initiating eviction, rather than foreclosure proceedings against Mr. Morin.

8

cause to be skeptical, but its skepticism is "at bottom a judgment about the quality of the evidence." *Taylor v. Ford Motor Co.*, No. 06-69-B-W, 2006 U.S. Dist. LEXIS 54050, at * 22 (D. Me. August 3, 2006). At this point, the Court must view the evidence in the light most favorable to the Plaintiff. If Mr. Morin was, as the parties to the agreement say he was, the owner of the property subject only to the condition subsequent of paying taxes and costs, his interest was at least as "actual, lawful, and substantial" an interest as Ms. McLellan's conviction that the city of Calais would reconvey her foreclosed property upon payment of back municipal assessments. *See McLellan*, CV-97-024 (Me. Super. Ct. Was. Cty., May 7, 1999) (Kravchuk, J.). Applying Maine's threshold for what constitutes an insurable interest, the Court cannot conclude that Mr. Morin has failed to articulate an interest which survives that threshold.

### B. Whether Mr. Morin Can Claim Consequential Damages

In addition to property damages, the Second Amended Complaint claims damages for "personal damage, consequential damages including emotional and physical distress, lost income, and attorney fees, and other costs." *Second Am. Compl.* ¶ 5. State Farm moved for summary judgment against all claims for damage other than property damage. *Def.'s Mot. for Summ. J.* at 8-11 (Docket # 13). In response, Plaintiff concedes she is not entitled to tort damages. *Pl.'s Opp'n to Def.'s Mot. for Summ. J.* at 8 (Docket # 28). However, referring to an Exhibit E, Plaintiff asserts that she is entitled to consequential damages under "contract law of foreseeable damages and under the late claims statute, 24-A M.R.S.A. § 2436-A." *Id.*

There are a number of flaws in the Plaintiff's argument on § 2436-A. First, she failed to attach a copy of "Exhibit E" and the Court is unaware what specific consequential damages she now claims. The Second Amended Complaint only states that Plaintiff "suffered property and personal damage, consequential damages, including emotional and physical distress, lost income,

9

and attorney's fees, and other costs." *Second Am. Compl.* ¶ 5. Second, Plaintiff initially pleaded a violation of § 2436-A[12] in Count III in the Amended Complaint. *Am. Compl.* (Docket # 1, Ex. 4). However, when filing the Second Amended Complaint, the Plaintiff eliminated Count III, the statutory cause of action, in its entirety and elected to proceed solely with a breach of contract theory. *Second Am. Compl.* In light of this procedural history, Plaintiff has waived the statutory remedy. Third, Plaintiff does not explain how § 2436-A would be triggered; there are no allegations in the Second Amended Complaint that can be construed as fitting within the list of unfair claims practices under the statute and Plaintiff has not explained which of the subsections would be implicated. Unlike *Rankin v. Allstate Ins. Co.*, the Plaintiff has made no attempt even to allege facts that would generate a jury issue under the statute and as *Rankin* points out the statute is to be "narrowly construed." 336 F.3d 8, 15 (1st Cir. 2003); *compare* Second Amended Complaint, *with* 24-A M.R.S.A. § 2436(1)(A)-(E).

Assuming that there is no claim under § 2436-A and that Plaintiff is proceeding solely on a breach of contract theory, the state of Maine does not recognize an independent tort of bad faith claims handling or bad faith settlement. *Marquis v. Farm Family Ins. Co.*, 628 A.2d 644, 652 (Me. 1993). State Farm is entitled to judgment on any consequential damages that sound in tort.

This leaves the question of what consequential damages are available for breach of contract. The Plaintiff demands generally "lost income, attorney's fees, and other costs." *Second Am. Compl.* ¶ 5. But, there is virtually nothing in the material statements of the parties on this question. In its motion, State Farm understandably concentrated on whether the Plaintiff would be entitled to tort damages and, although the insurance contract was attached as an

---

[12] Plaintiff miscited the Unfair Claims Settlement Practices Act as 24-A M.R.S.A. § 2438 et seq.

exhibit, there is no statement of material fact on other potential consequential damages.[13] It is unlikely the Plaintiff would be entitled to attorney's fees, absent a contractual basis for that remedy, but the failure to provide an evidentiary basis for this conclusion and to make the argument falls at this point against the proponent, State Farm. There may be some consequential damages under the contract and it remains to be seen what "traditional remedies for breach of contract" may be available. *Marquis,* 628 A.2d at 644. State Farm is, however, entitled to summary judgment on that portion of the claim asserting personal injuries and to the extent the Plaintiff is now making a claim for a statutory remedy under 24-A M.R.S.A. § 2436-A.

## IV. CONCLUSION

The Court DENIES Defendant's Motion for Summary Judgment (Docket # 13) on the issue of insurable interest. It GRANTS Defendant's Motion for Summary Judgment insofar as Plaintiff asserts tort damages and a violation of 24-A M.R.S.A. § 2436-A, but otherwise DENIES Defendant's motion.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of September, 2006

---

[13] State Farm asserts that the insurance contract limits consequential damages, including attorney's fees, but it has made no statements of material fact on these issues. Instead, it simply attached the insurance contract to the statement and proceeded to argue an absence of provision. The court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' statements of material fact." *Ricci v. Applebee's Northeast, Inc.*, 297 F. Supp. 2d 311, 321 (D. Me. 2003). If State Farm wished the Court to draw conclusions about the range of remedies available under the insurance contract, it had the obligation to place its contentions in its statement of material fact, give the Plaintiff an opportunity to respond, and narrow the issue for the Court. *Id.* ("Local Rule 56 was designed to halt the former summary judgment practice of submitting a voluminous record and leaving it to the court the duty to comb the record in search of material facts." *Id.*).